# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-714V

| | |
|---|---|
| TERRY BOYD,<br><br>　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: June 3, 2025 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA*, for Petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC*, for Respondent.

### DECISION AWARDING DAMAGES[1]

On May 15, 2023, Terry Boyd filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccine on November 24, 2020. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although Respondent conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of **$167,500.00**, for actual pain and suffering.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

Respondent filed a Rule 4(c) Report in April 2024 conceding that Petitioner was entitled to compensation in this matter. ECF No. 19. A Ruling on Entitlement was issued on the same day. ECF No. 21. The parties thereafter attempted to informally resolve damages but were unsuccessful, and subsequently filed briefs setting forth their competing views. ECF Nos. 26-28. I proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed damages issue. ECF No. 30. The parties agreed, and the hearing was held as scheduled on May 30, 2025.[3] ECF No. 31; Min. Entry, docketed May 30, 2025. During the hearing, I made an oral damages determination. This Decision memorializes those findings and determinations.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

---

[3] At the end of the hearing held on May 30, 2025, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579 (2013).

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior GBS compensation within SPU. I fully adopt and hereby incorporate my prior discussions in Sections II and III of *Holmberg v. Sec'y of Health & Hum. Servs.*, No. 21-1132V, 2024 WL 4607929, at *3-5 (Fed. Cl. Spec. Mstr. Oct. 7, 2024).

### III.    Appropriate Compensation in this Matter

In this case, awareness of the injury is not disputed. Petitioner was a competent adult with no impairments that would impact his consciousness of his injury. Therefore, I analyze principally the severity and duration of the injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the parties' arguments during the expedited damages hearing.

Petitioner's medical records and affidavits provide a credible description of his GBS injury, showing a moderately-severe acute phase requiring presentation at the ER within roughly one month of vaccination, ultimately resulting in a ten-day hospital stay (plus another three days for related sequelae, including weakness, constipation, and abdominal pain). Petitioner's initial hospitalization included diagnostic procedures (MRIs, CTs, EKG, lumbar puncture), one five-day course of IVIG, isolation due to a simultaneous COVID infection, culminating in his discharge to a 29-day (total) in-patient skilled nursing facility for physical and occupational therapy ("PT/OT").

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

Following discharge from the in-patient nursing facility in January 2021, Petitioner experienced ongoing numbness and weakness in the bilateral upper and lower extremities, plus fingertip numbness and neuropathy. *See,* e.g., Ex. 2 at 43. These symptoms caused Petitioner trouble performing activities of daily living ("ADLs"), including dressing, picking things up, writing, and feeding himself; he also tired easily. *See id.* Because of some of his difficulties with ADLs, as of February 2021, Petitioner's primary care provider ("PCP") recommended use of a shower chair, hand-held shower spray, bedside commode, and rollator (walker/wheelchair). The evidence shows Petitioner used some or all of these assisted devices beginning in May 2021 and lasting through November 2021. Petitioner also treated with at least nine months of weekly B-12 injections for ongoing neuropathy related to his GBS (from May 2021 through February 2022). His GBS-related treatment course lasted for approximately 12-14 months after his hospital discharge, with his last mention of GBS sequelae in the medical records occurring on February 14, 2022. *Id.* at 7.

Although I credit Petitioner's assertions that he currently continues to experience ongoing GBS sequelae, including weakness, numbness/coldness in his left hand, and lack of strength throughout his body, his recovery has been good overall – a fact supported by his medical records failing to show recommended ongoing treatment after February 2022 (at the latest). *E.g.*, Ex. 2 at 7-10, 13-17. I further give weight to Petitioner's assertions that as a result of his GBS and related sequalae, he experienced some depression having to rely on his wife for tasks he usually accomplished (Ex. 6 ¶ 15; Ex. 9 ¶ 4), as well as a loss of enjoyment of the activities he was looking forward to in retirement – woodworking and mowing/weeding the yard (Ex. 9 ¶¶ 7-8). Yet, Petitioner's case is not as severe as the worst GBS cases wherein petitioners remain non-ambulatory or significantly disabled.

In his briefings and during the damages hearing, Petitioner cites to a number of damages decisions involving GBS injuries and highlights the similarities between the petitioners in those cases and Petitioner. Motion at 6-8; Reply at 1-2.[5] Petitioner argues that an award of $175,000.00 is appropriate in this case. Motion at 1. Petitioner bases this request on his lengthy hospitalization (including five days of IVIG and other diagnostic procedures) and in-patient treatment, as well as his use of a walker and recommended home health aide, as he was not able to get dressed on his own or feed himself, resulting

---

[5] In particular, Petitioner cited to *Robinson v. Sec'y of Health & Hum. Servs.,* No. 18-88V, 2020 WL 5820967, at *2 (Fed. Cl. Aug. 27, 2020) (awarding $160,000 for pain and suffering); *Gruba v. Sec'y of Health & Hum. Servs.*, No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Apr. 13, 2021) (awarding $165,000 for pain and suffering); *Gross v. Sec'y of Health & Hum. Servs.,* No. 19-835V, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. Mar. 11, 2021) (awarding $160,000 for pain and suffering); *W.B. v. Sec'y of Health & Hum. Servs.*, No. 18-1634V, 2020 WL 5509686, at *4 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000 for pain and suffering); and *Weil v. Sec'y of Health & Hum. Servs.,* No. 21-831V, 2023 WL 1778281 (Fed. Cl. Spec. Mstr. Jan. 6, 2023) (awarding $140,000 for pain and suffering).

in 16 months of treatment. *Id.* at 9. Respondent, on the other hand, argues Petitioner suffered a more mild course of GBS than in other cases,[6] due to his 30-day total hospitalization, no complications while hospitalized (or inpatient rehabilitation), and there is no evidence that Petitioner sought the care of PT, OT, or a home health aide following discharge – despite such care being recommended. Response at 5. As a result, Respondent proposes an award of only $112,500.00. *Id.* at 1.

Based upon the forgoing, and considering the parties' written and oral arguments, I find that Petitioner suffered a moderately-severe injury – noting that GBS has a more frightening and inherently-severe character as a vaccine injury, in comparison to other Program claims – and as a result, a higher-than-average pain and suffering award is appropriate. *See Gross v. Sec'y of Health & Hum. Servs.*, No. 19-0835V, 2021 WL 2666685 at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2021).

At the same time, however, the considerations that impact how a pain and suffering award is calculated – level of pain, length of hospitalization and inpatient rehabilitation, degree and number of procedures for treatment, duration of treatment, and overall recovery – bear on the final figure to be awarded. Some GBS injuries feature permanent disabilities and/or continuous treatment (i.e., with medications), while others are characterized by a better recovery. Petitioner's GBS injury required fairly intensive medical treatment, including a 10-day hospitalization, five-day course of IVIG treatment and a nearly one month stay in in-patient rehabilitation for PT/OT; his injury impacted his ability to care for himself, including dressing and feeding himself, as well as causing mobility issues, the use of assisted devices, and exhaustion. Still, his subsequent condition is much improved following his approximate 14-month course of treatment, even accounting for some lingering deficits common to GBS's aftermath (weakness, numbness). And Petitioner did not require long-term neurological medications reflecting ongoing sequelae – as his receipt of B-12 injections do not constitute a *direct* neurological treatment.

I find the comparable damages determinations offered by Petitioner to be helpful in providing a reasonable range of outcomes pertaining to the instant case, with *Gruba* – involving a past pain and suffering award of $165,000.00 – perhaps providing the most guidance. No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Apr. 13, 2021). The *Gruba* petitioner's course included a 10-day hospital stay (similar to Petitioner herein), three-day course of IVIG, nine-day in-patient treatment, and 17 out-patient PT sessions. *See id. Gruba* made a notably good recovery but still had some mild residual numbness after her approximate three-year course – nearly double that of Petitioner. *Id.* The *Gruba*

---

[6] Respondent has unhelpfully not offered *any* cases as comparable to support his proposed award of $112,500.00. Instead, he simply attempts unsuccessfully to distinguish the instant case from those cited as comparable cases by Petitioner. *See* Response at 6-7.

petitioner did not at any time need assistance walking and it was notable that she did not experience respiratory distress. *Id.* However, it was considerable that *Gruba* had to leave a job at a childcare facility because she could no longer handle work with children and/or receive vaccinations as a result of her GBS. *Id.*

While the same job-related factors are not present in the instant case, Petitioner's immediate treatment during the acute phase of his GBS was more severe than what was experienced by the *Gruba* petitioner. In fact, Petitioner's inpatient treatment lasted for approximately 20 days longer, and Petitioner required considerable assistance with mobility, including the eventual use of assisted devices – unlike the *Gruba* petitioner who did not require assistance with mobility. And, while not a job-related loss *per se*, Petitioner here nonetheless lost the enjoyment of his woodworking hobbies he had been looking forward to in retirement, a factor that should be given some weight. These differences dictate that Petitioner should be awarded *slightly* more than the *Gruba* petitioner.

However, I do not find that an award above $170,000.00 (consistent with Petitioner's request), is warranted here. Where pain and suffering awards exceed $170,000.00, the petitioners typically have demonstrated the significant impact their vaccine-related injury had on their lives, such as permanent limitations on the nature of the work they could perform.[7] More so, in such cases the injured parties experience worse prognoses, and continue to require medication for ongoing true GBS-related issues.[8] I recognize that Petitioner has some long-lasting sequelae from his GBS, but the lingering symptoms are not severe enough to require ongoing treatment and thus do not compute to the full amount of Petitioner's requested award here. *See,* e.g., Ex. 2 at 7-10.

For these reasons, I do not find that the GBS injury and its sequelae were of such high severity to justify an award of the magnitude requested by Petitioner. The actual pain and suffering component will nonetheless be larger than in many vaccine injury cases, simply for the reason (as I stated at hearing) that the severe and frightening quality of an immune-mediated injury like GBS warrants commensurate damages. But the fact that *this* case of GBS was a bit less severe than comparable instances means that the actual award should be *slightly* lower. I therefore award actual pain and suffering of **$167,500.00.**

---

[7] *See,* e.g., *Enstrom v. Sec'y of Health & Hum. Servs.*, No. 20-2020V, 2023 WL 345657 (Fed. Cl. Spec. Mstr. Dec. 16, 2022) (awarding $170,000.00 in pain and suffering where the petitioner, in part, retired early from a job at a power company because it involved significant walking that he could not perform due to his GBS).

[8] *See,* e.g., *Dillenbeck v. Sec'y of Health & Hum. Servs.*, 17-428V, 2019 WL 4072069, at *14 (Fed. Cl. Spec. Mstr. July 29, 2019); *Fedewa v. Sec'y of Health & Hum. Servs.,* No. 17-1808V, 2020 WL 1915138, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2020).

## CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $167,500.00**, **(representing compensation for actual pain and suffering) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

                                                  <u>s/Brian H. Corcoran</u>
                                                  Brian H. Corcoran
                                                  Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.